**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SYNERGY FLAVORS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.:   1:20-cv-1910** |
| | ) | |
| **ADENIKE GRAHAM and KIMBERLY** | ) | |
| **MCNULTY, on behalf of themselves and** | ) | |
| **all others similarly situated,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**NON-PARTY SYNERGY FLAVORS, INC.'S MOTION TO QUASH
PLAINTIFFS' SUBPOENA AND FOR A PROTECTIVE ORDER**

Non-party Synergy Flavors, Inc. ("Synergy Flavors"), by its attorneys Lewis Brisbois Bisgaard & Smith LLP, respectfully submits this Motion to Quash Plaintiffs' Subpoena and for a Protective Order with respect to a subpoena served by Plaintiffs Adenike Graham and Kimberly McNulty on behalf of themselves and all others similarly situated (hereinafter "Plaintiffs") on Synergy Flavors, and requests that this Court quash, in whole or in part, the subpoena and enter a protective order prohibiting Plaintiffs from serving additional subpoenas on Synergy Flavors without leave of Court.

**PRELIMINARY STATEMENT**

Plaintiffs brought an action against National Beverage Corporation in the United States District Court for the Southern District of New York, Case No. 19-cv-873 (AT). As set forth more fully below, Plaintiffs served two subpoenas on non-party Synergy Flavors in that action. Synergy Flavors seeks to quash the most recently served Subpoena pursuant to Fed. R. Civ. Pro. 45(d)(3)(A)(iv) and (d)(3)(B)(i), each of which states that the "court for the district where compliance is required" may quash subpoenas. The Subpoena Synergy Flavors seeks to quash

purports to command Synergy Flavors to sit for deposition and produce documents at Springhill Suites, 300 Marriott Drive, Lincolnshire, IL, 60069, Lake County, Illinois. *See Exhibit A*, Subpoena dated February 7, 2020. The Place of Holding Court for Lake County is the Eastern Division for the Northern District of Illinois. (https://www.ilnd.uscourts.gov/Pages.aspx?page=PlaceinHolding)

Plaintiffs served their first subpoena on non-party Synergy Flavors on December 10, 2019 ("the December Subpoena"). *See Exhibit B*, Subpoena dated December 6, 2019. The December subpoena sought disclosure of twenty categories of documents purporting to be related to seventeen distinct and separate National Beverage Corporation's LaCroix-brand carbonated water products between January 29, 2016 and January 29, 2019 ("the LaCroix Products").

Response to many, if not all, categories would have required the disclosure of privileged and/or trade secret or other confidential research, development, or commercial information. Nevertheless, Synergy Flavors provided 97 pages of documents, including material safety data sheets and Regulatory Information sheets for the flavors that Synergy Flavors supplies to National Beverage Corporation that may be used in the LaCroix Products. *See Exhibit C*, January 20, 2020 correspondence from Synergy Flavors to An V. Truong. Synergy Flavors noted that responding was done at the cost of "considerable time and effort" to Synergy Flavors, and that the documents were produced subject to Synergy Flavors' objections that the December Subpoena was replete with requests that were "vague, unclear and unduly broad, and potentially could impose significant additional burdens on Synergy [Flavors] (involving distraction to [Synergy Flavors'] business, lost time and effort and/or unexpected costs)," and that at least "some of the requests would unjustifiably expose Synergy[ Flavors'] highly confidential and/or trade secret information to disclosure and misuse, and/or the requests apply to legally privileged materials." No further action was taken by Plaintiffs with respect to the December Subpoena.

On February 7, 2020, Plaintiffs served a second subpoena on non-Party Synergy Flavors ("the February subpoena"). *See Exhibit A*. The February subpoena seeks both deposition testimony and document production related to seven categories of information that again purport to be related to the LaCroix Products, as follows:

1.  Information regarding [Synergy Flavors'] sourcing and purchase of flavoring ingredients related to the LaCroix Products.

2.  Information regarding [Synergy Flavors'] formula, recipe and/or makeup of any flavor ingredient(s) sold to National Beverage Corp., including any changes to formula(s) and/or ingredient(s) during the relevant time period.

3.  Information regarding [Synergy Flavors'] sale of flavor ingredients to National Beverage Corp., whether sold directly to National Beverage Corp. or indirectly through one of its agents or vendors.

4.  Information regarding any communications between [Synergy Flavors] and National Beverage Corp. regarding the flavoring and ingredients sold by [Synergy Flavor] to National Beverage Corp. as it relates to "natural," "all natural," "100% natural" or the like.

5.  Information regarding any communications between [Synergy Flavors] and National Beverage Corp. regarding National Beverage Corp.'s labeling and packing of its LaCroix Products as "natural," "all natural," "100% natural" or the like.

6.  Information regarding testing and analysis conducted on the flavors and/or ingredients sold by [Synergy Flavors] to National Beverage Corp., including any certificates or certifications regarding the ingredients in the flavor(s) sold and any certificates or certifications regarding any "natural" claim or similar claim made with respect to the flavor(s) sold.

7.  Information regarding the individual(s) and/or divisions, departments, or the like that are or were (during the relevant time period) responsible for handling the sale of [Synergy Flavors'] flavors to National Beverage Corp.

*Id.* Upon information and belief, subpoenas that are the same or similar to the December subpoena and/or the February subpoena have also been served upon some, if not all, other entities with which National Beverage Corporation transacts business and/or who supply flavors for the LaCroix Products—that is, upon Synergy Flavors' direct competitors in a highly competitive marketplace.

Synergy Flavors has met and conferred with counsel for Plaintiffs, who has refused to narrow the scope of the proposed deposition and document-production categories. As such, Synergy Flavors is compelled to file this Motion to Quash, on the grounds that: (1) providing deposition testimony

and production of documents related to the categories of information contained in the February Subpoena would impose an undue burden upon non-party Synergy Flavors; and (2) the discovery requested in the February Subpoena impermissibly and unnecessarily impinge upon the trade secrets of non-party Synergy Flavors, with the direct, immediate, and practically unavoidable threat of disclosure to non-party Synergy Flavors' direct competitors.

Accordingly, Synergy Flavors respectfully requests the Court quash the February Subpoena and issue a Protective Order precluding Plaintiffs from serving additional subpoenas upon non-party Synergy Flavors, or in the alternative, limit the Subpoenas in time and subject matter, and permit Synergy Flavors to review, examine, and redact any privileged documents prior to their production.

**ARGUMENT**

**I.      THE FEBRUARY SUBPOENA IMPOSES AN UNDUE BURDEN UPON SYNERGY FLAVORS UNDER FED. R. CIV. PRO. 45(d)(3)(A)(iv), REQUIRING THIS COURT TO GRANT THIS MOTION**

The February Subpoena violates both the broad discovery provisions of Fed. R. Civ. Pro. 26 and Fed. R. Civ. Pro. 45, which applies to this attempt of Plaintiffs to compel the appearance of a representative of non-party Synergy Flavors at a deposition.  Pursuant to Rule 26:

> [A] court, 'on motion or on its own, must limit the frequency or extent of discovery otherwise allowed' if it determines that (1) the discovery sought is unreasonably cumulative or can be obtained from a source that is more convenient; (2) that the party seeking discovery has had ample opportunity to obtain the information; or (3) the burden of the proposed discovery outweighs its likely benefit.  Rule 26 also allows a court to enter a protective order, for good cause shown, forbidding inquiry or limiting the scope of discovery into certain matters.

*Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 183 (N.D. Ill., 2013) (internal citations omitted).

Rule 45 **requires** a court to quash a subpoena issued upon a non-party where, *inter alia*, the subpoena "subjects the recipient to undue burden."  *Id.*

> In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that 'non-party' status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. Indeed, while parties must accept the burdens of litigation, non-parties have different expectations. As such, courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs. Thus, in determining whether the recipient of a subpoena is being subjected to an undue burden, courts consider a number of factors, including 'the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaing part.

*Id.*, at 188 (internal citations omitted); *Tresona Multimedia v. Legg*, 2015 U.S. Dist. LEXIS 107723 at *7 (N.D. Ill. 2015) ("The Federal Rules of Civil Procedure provide that a court **shall** quash or modify a subpoena if it subjects a person to undue burden.") (emphasis added); *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 2014 U.S. Dist. LEXIS 203122 at *4–5 (C.D. Ill. 2014) ("Upon motion by the non-party, the Court **must** quash or modify a subpoena that requires disclosure of privileged or other protected matter . . . .") (emphasis in original).

> The advisory committee's notes to the 1991 amendments to Rule 45 make clear that the amendments have enlarge[d] the protections afforded persons who are required to assist the court by giving information or evidence. The rule requires the court to protect all persons from undue burden imposed by the use of the subpoena power. This is not the discretionary language of Rule 26(c), under which a court may make any order which justice requires to protect a party or person from undue burden. **It is a command.**

*Robinson v. Morgan Stanley*, 2010 U.S. Dist. LEXIS 25073 at *6 (N.D. Ill. 2010) (internal citations and quotations omitted) (emphasis added).

Because non-parties have a "different set of expectations" than parties with respect to the burdens of discovery, the status of Synergy Flavors as a non-party "is a factor entitled to **special weight** in evaluating the balance of competing needs." *Id.*, at *7 (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (emphasis in original).

The Court must consider the relative relevance of the discovery sought and Plaintiffs' need for the information with this special weight in mind. Here, non-party Synergy Flavors understands

the nature of the underlying dispute between the actual litigants in the underlying case to center around National Beverage Corporation's labeling of the LaCroix Products as "all natural" or other similar designations. To this end, Synergy Flavors supplied extensive documentation to Plaintiffs in response to the December Subpoena documents that it previously provided to National Beverage Corporation —including its material safety data sheets and its "Regulatory Information" sheets, which provide the following certification:

> Pursuant to section 101.22(a)(3) of Title 21 of the Code of Federal Regulations, we certify that this formula meets the definition of natural flavor as set by the United States Food and Drug Administration. This formula has been designed, developed, and manufactured without the use of artificial flavors.

*See*, *e.g.*, *Exhibit C*, at p. 44.

Plaintiffs' requests for a deposition of Synergy Flavors on the "sourcing and purchase of flavoring ingredients related to the LaCroix Products," or the formula, recipe and/or makeup of any flavor ingredient(s) sold to National Beverage Corp., including any changes to formula(s) and/or ingredient(s) during the relevant time period," or the like, does not seek new relevant evidence. The certifications Synergy Flavors has produced establish that the flavors it provided were "natural flavors" within the meaning of regulations promulgated by the relevant regulatory authority. There is no basis or justification for imposing significant additional burdens and creating substantial new risks for non-party Synergy Flavors in this matter.

The breadth of the information sought highlights the burdens placed on Synergy Flavors. Plaintiffs have requested information encompassing three years, during which Synergy Flavors and National Beverage Corporation have entered into many business transactions concerning numerous products, some of which are unrelated to the issues at hand. For Synergy Flavors to comply, it would require at least one senior employee (i.e., someone within Synergy Flavors with knowledge of, among other things, its proprietary formulas, sales information, purchasing methods, and

sourcing for ingredients) to, at minimum, examine each of these transactions; determine which involve possibly relevant flavors; determine which portion(s) of the flavors involved are relevant to the underlying dispute; and trace backwards the provenance of each of the constituent ingredients. Then, that senior employee would be required to sit for a deposition, with all of the time, expense, and lost productivity that entails. This would require a considerable outlay of time, effort, and manpower that would have to be devoted to an exercise that would result in, at best, information of questionable relevance to determining the issues in the underlying dispute, particularly in light of the documents Synergy Flavors has already produced.

Synergy Flavors is a non-party to the underlying dispute, a factor afforded substantial weight in the Court's determination of whether the discovery requests impose an undue burden. Forcing Synergy Flavors to undertake substantial burdens to provide information of questionable relevance does not reflect the "special weight" afforded to Synergy Flavors' status as a non-party, let alone the fact that Synergy Flavors has already provided substantial relevant information. As such, requiring Synergy Flavors to answer the February Subpoena constitutes an "undue burden" under Rule 45(d)(3)(A)(iv), making it mandatory hat the Court to quash the February Subpoena.

## II. ANSWERING THE FEBRUARY SUBPOENA WOULD REQUIRE SYNERGY FLAVORS TO DISCLOSE TRADE SECRETS OR OTHER CONFIDENTIAL RESEARCH, DEVELOPMENT, OR COMMERCIAL INFORMATION, IN VIOLATION OF FED. R. CIV. PRO. 45(d)(3)(B)(i)

Pursuant to Fed. Civ. Pro. 45(d)(3)(B)(i), in order to protect non-party Synergy Flavors, this court "may, on motion, quash or modify the subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information." This is echoed in Fed. R. Civ. Pro 26(c)(1)(G), which permits "any person from whom discovery is sought" to move for a protective order in, *inter alia*, "the court for the district where the deposition will be taken," and

which allows this Court to issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."

"Courts have used the Restatement of Torts definition of 'trade secret' when deciding whether certain business information should be covered" under Rule 26. *Zahran v. Trans Union Corp.*, 2002 U.S. Dist. LEXIS 16791 at \*5 (N.D. Ill. 2002). Section 757 of the Restatement of torts states that "[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Id.*, citing Restatement of Torts § 757 cmt. b (1939).

> In order to compel the disclosure of trade secrets pursuant to a subpoena, the serving party must show 'a substantial need for the testimony or material that cannot be otherwise met without undue hardship. Fed. R. Civ. P. 45(d)(3)(C)(i). 'Stated another way, the serving party must demonstrate that the disclosure of trade secrets is both relevant *and* necessary to the underlying litigation.'

*Garnett v. Runzheimer Int'l Ltd.*, 2016 U.S. Dist. LEXIS 14997 at \*2 (E.D. Wis. 2016); *see also Am. Soc'y of Media Photographers v. Google Inc.*, 2013 U.S. Dist. LEXIS 64041 at \*13 (N.D. Ill. 2013) ("[I]f the Court here were to order a non-party . . . to comply with Plaintiff's subpoena merely based on showing of possible relevance, such a holding could cause [the non-party] to be forced to respond to a host of other subpoenas in the future. This slippery slope is not one the Court intends to traverse down.")

Among other things, Plaintiffs are seeking information regarding non-party Synergy Flavors' "sourcing and purchase of flavoring ingredients," "formula, recipe and/or makeup of any flavor ingredient(s) . . . including any changes to formula(s) and/or ingredient(s)," "sale of flavor ingredients," and "testing and analysis conducted on the flavors and/or ingredients." *See Exhibit A.*

Synergy Flavors is in the business of providing flavorings to companies wishing to sell products. The very lifeblood of its business is being able to provide these customers with flavorings

that satisfy the needs of those customers better than their competitors. The means by which this is accomplished is through its ingredients and the proportions thereof in formulas and recipes, the contents of which are jealously guarded from its competitors. Much of Synergy Flavors' business is based upon the proprietary content of its "formula, recipe and/or makeup of any flavor ingredient(s)." Yet this is precisely what Plaintiffs seek. Because Plaintiffs are seeking disclosure of non-party Synergy Flavors' trade secrets, its subpoena should be quashed in its entirety.

Synergy Flavors is aware that a Stipulated Confidentiality Agreement and Protective Order ("the Protective Order") has been entered in the underlying case. *See Exhibit D*, Stipulated Confidentiality Agreement and Protective Order dated June 3, 2019. The Protective Order was made at the agreement "of the parties to this action," which does not include Synergy Flavors. *Id.*, at p. 1. Upon information and belief, Plaintiffs have issued subpoenas substantially similar to the December Subpoena and/or the February Subpoena upon at least some of Synergy Flavors' direct competitors that would most benefit from the disclosure of these trade secrets. Presumably, those subpoenas also require representatives of those entities to sit for deposition. However, under the terms of the Protective Order, a party in possession of even material marked as "Confidential" "may disclose such information" to witnesses in the underlying action during their depositions. To the extent that these witnesses may include representatives of Synergy Flavors' direct competitors, there is simply no way that disclosure of these materials can be done in a way that does not materially endanger Synergy Flavors' business interests. As such, the Protective Order does not provide adequate protection, and, therefore, the February Subpoena should be quashed. *See Am. Soc'y of Media Photographers* at *14.

## CONCLUSION

For the foregoing reasons, non-party Synergy Flavors respectfully requests that its Motion to Quash the subpoena issued by Plaintiffs on February 7, 2020, be granted in its entirety, and that Synergy Flavors be awarded its fees and costs in connection with bringing this Motion.

Dated: Chicago, Illinois

March 20, 2020

Respectfully Submitted,

By: **/s/ Jacob D. Sawyer**
    **LEWIS BRISBOIS BISGAARD & SMITH LLP**
    Jacob D. Sawyer, #6281475
    550 West Adams Street, Suite 300
    Chicago, Illinois 60661
    (312) 345.1718 (phone)
    (312) 345.1778 (fax)
    Jacob.Sawyer@lewisbrisbois.com
    **Attorneys for Non-Party Synergy Flavors, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2020, a copy of the foregoing **Non-Party Synergy Flavors, Inc.'s Motion to Quash Plaintiffs' Subpoena and For a Protective Order** was sent to the following parties via electronic mail:

An V. Truong
Simmons Hanly Conroy
112 Madison Avenue, 7th Floor
New York, NY 1016
Email: atruong@simmonsfirm.com
Tel: (212) 784-6400

Respectfully Submitted,


/s/ Jacob Sawyer



Jacob D. Sawyer, #6281475
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
P: 312.345.1718
F:312.345.1778
Email: Jacob.Sawyer@lewisbrisbois.com
*Attorneys for Defendant*

4826-9097-1575.1

11